## David Maiden v. Edward Ingersoll.

When a treaty has been made by the proper federal authority, and ratified, it becomes the law of the land, and no courts have the power to question, or in any manner look into, the powers or rights recognized by it in the nation or tribe with whom it was made.

By a treaty made in 1807 between the United States and the Chippewa, Ottawa, Pottawatomie and Wyandotte tribes of Indians, certain lands near Detroit, among others, were reserved to these tribes. The treaty did not show on its face what tribe was in the occupancy of these lands. By another treaty with the Pottawatomies in 1827, these lands, therein stated to have been before "reserved to the use of the said tribe," were ceded to the United States. — *Held*, That this treaty having recognized the right to this reserve to have been in the Pottawatomies, the courts are bound so to regard it, and must consider the treaty of 1827 as extinguishing the reserve.

*Submitted May 18th. Decided May 21st.*

Case reserved from Oakland Circuit.

The statement and questions reserved are given in the opinion.

*Baldwin & Draper*, for plaintiff:

Under the statute (*Comp. L.* 2489) the certificate of purchase issued by the Commissioner of the State Land Office, is, of itself, sufficient evidence of title to enable plaintiff to maintain this action. The courts of this state must assume that the state, as trustee, has title to all the lands the commissioner assumes to convey. The only way to defeat a recovery is by showing a better title in the defendant.

The Pottawatomies assuming to cede this land to the United States, and their right being recognized by the treaty, it must be presumed that they had either acquired the rights of the other tribes mentioned in the treaty of 1807, or else that the land was originally reserved for them, and that they had the actual title when the last mentioned treaty was formed.

*Backus & Harbaugh*, for defendant:

The treaty with one of the four tribes of Indians to whom this reservation was made, would, at the most, have extin-

guished the Indian title to an undivided one-fourth of the lands only. If this be so, they were not subject to designation as University lands.—4 *Stat. at Large*, 180.

We have a right to show collaterally, in a court of law, that the State had no title to the land it assumed to sell.— 6 *Con. U. S. R.* 355; 3 *Ibid.* 319, 360; 10 *Johns.* 23; 12 *Ibid.* 81; 18 *How.* 87.

CAMPBELL J.:

This case comes before us upon the following statement and reservation from the Circuit Court for the county of Oakland:

"This is an action of ejectment, brought by the plaintiff, for the recovery of the west half of the northeast quarter of section thirty-one, town one north, of range ten east, in the township of Southfield and county of Oakland; and for the purposes of this suit, the parties hereto mutually admit the following as the facts in the case: That the premises in question are a part of the reservation made for the Ottawa, Chippewa, Wyandotte, and Pottawatomie nations of Indians, under and by virtue of the sixth article of a treaty between the United States and said nations, of the date of the 17th November, 1807.

"That said premises are a part of the reserve mentioned in said article, at or near the Tonquish village, on the River Rouge, in said county and township aforesaid. That the premises in question are a part of section 31, being one of seventy-two sections which the Secretary of the Treasury of the United States designated or reserved, purporting to act under and by virtue of an act of Congress of the 20th day of May, 1826, entitled " An Act concerning a Seminary of Learning in the Territory of Michigan." That the only extinguishment of the Indian title to the said premises, shown by the plaintiff, was by virtue of a treaty between the United States and the Pottawatomie Indians, of the 19th September, 1827; which said treaties and acts of Congress are hereby made a part of this case.

" It is further admitted, as facts in this case, that the sole title claimed by the plaintiff to said premises, is the certificate of the proper authorities of the state of Michigan, under the laws of the state for the conveyance of University lands. And further, that the only title of the state of Michigan to said land for University purposes, is by virtue of the designation and reserve of the Secretary of the Treasury, under color of the said act of Congress. And it is further admitted, that at the time of the commencement of this suit, the defendant was in possession of the premises in controversy.

" The court, deeming the questions arising in this case of sufficient importance, hereby reserves the same for the opinion and advice of the Supreme Court; which questions are as follows:

" 1st. Was the Indian title to said premises ever so extinguished as to authorize or warrant the designation or reservation of the same, by the Secretary of the Treasury, under and by virtue of the said act of Congress, of the 20th of May, 1826?

" 2d. Had the state of Michigan any title to the same, for University purposes, which they could grant to the plaintiff?

" 3d. Has the plaintiff any title as derived from his said certificate?"

On the 20th of May, 1826, an act of Congress was passed, authorizing the Secretary of the Treasury " to set apart and reserve from sale, out of any of the public lands within the Territory of Michigan, to which the Indian title may be extinguished, and not otherwise appropriated, a quantity of land, not exceeding two entire townships, for the use and support of a University," &c. — 4 *U. S. Stat. at Large*, 180.

The premises in question form a part of the two mile reservation near Tonquish's village on the River Rouge, made by the sixth article of the treaty of Detroit of 1807,

between the United States and the Chippewas, Ottawas, Pottawatomies, and Wyandottes. — 7 *U. S. Stat.* 105. The reserve was not made for the benefit of any individual grantee, but was, among others, reserved to the Indian nations, and consequently remained as if there had been no cession or treaty whatever. The treaty in question does not show upon its face what tribe was in the occupancy of this reserve. But in 1827, a treaty was made with the Pottawatomie tribe in the following terms (7 *U. S. Stat.* 305):

" In order to consolidate some of the dispersed bands of the Pottawatomie tribe, in the Territory of Michigan, at a point removed from the road leading from Detroit to Chicago, and as far as practicable from the settlements of the whites, it is agreed that the following tracts of land, *heretofore reserved for the use of the said tribe,* shall be, and they are hereby, ceded to the United States." Among the lands thus ceded are the premises in question.

When a treaty has been made by the proper federal authority, and ratified, it becomes the law of the land, and the courts have no power to question, or in any manner look into, the powers or rights of the nation or tribe with whom it is made. The action of the treaty making power is conclusive upon such inquiry. And when territorial rights are by treaty recognized as having existed in one tribe, we are bound so to regard them. We must, therefore, consider the treaty of 1827 as extinguishing the reserve made in 1807. And consequently the land was subject to designation for University purposes as soon as the treaty became operative.

The next question to be considered is whether the title to the land so designated was in the state of Michigan when the certificate issued to the plaintiff. This question is answered by the Ordinance of June 23d, 1836 (4 *U. S. Stat.*) containing the terms of admission into the Union offered by Congress for the acceptance of Michigan, which were accepted by the state. By that act, the seventy-two

MAIDEN *v.* INGERSOLL.

sections set apart for University purposes, under the act of 1826, were granted and conveyed to the state in terms of absolute conveyance, to be appropriated to the use and support of the University in such manner as the Legislature should prescribe. The state became invested with the fee of the land without further conveyance.

The third question reserved is disposed of by the answers to the others.

Let it be certified to the Circuit Court for the county of Oakland, as the opinion of this Court, that each of the questions reserved should be answered in the affirmative.

The other Justices concurred.